## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

JAIME C. SANTIAGO,               :
         Plaintiff,           :
                       :     CASE NO. 3:10-cv-1839 (VLB)
   v.                    :
                       :     February 29, 2012
WHIDDEN, et al.,              :
         Defendants.     :

## RULING GRANTING THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
## [Doc. #19]

      The plaintiff, Jaime C. Santiago, commenced this action *pro se* against

defendants Warden Whidden, Deputy Warden Faneuff, Unit Manager Regan,

Librarian Harrisson, Medical Supervisor Dolan and John Doe.  On July 27, 2011,

the plaintiff filed an amended complaint against defendants Whidden, Faneuff and

Regan only.  Thus, all claims against defendants Harrisson, Dolan and Doe have

been withdrawn.  Defendants Whidden, Faneuff and Regan ("the defendants")

have filed a motion for summary judgment on the claims asserted in the amended

complaint.  For the reasons that follow, the defendants' motion for summary

judgment is granted.


## I. Standard of Review

      In a motion for summary judgment, the burden is on the moving party to

establish that there are no genuine issues of material fact in dispute and that it is

therefore entitled to judgment as a matter of law.  *See* Rule 56©, Fed. R. Civ. P.;

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  The moving party may

satisfy this burden "by showing – that is pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (per curiam) (internal quotation marks and citations omitted).  Once the moving party meets this burden, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial," *Anderson*, 477 U.S. at 255, and present such evidence as would allow a jury to find in his favor in order to defeat the motion for summary judgment.  *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000).  Merely verifying the allegations of the complaint in an affidavit is insufficient to oppose a motion for summary judgment.  *Zigmund v. Foster*, 106 F. Supp. 2d 352, 356 (D. Conn. 2000) (citing cases).

When reviewing the record, the court resolves all ambiguities and draws all permissible factual inferences in favor of the party against whom summary judgment is sought.  *Patterson v. County of Oneida, NY*, 375 F.3d 206, 218 (2d Cir. 2004).  If there is any evidence in the record on a material issue from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is inappropriate.  *Security Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004).  However, "'[t]he mere of existence of a scintilla of evidence in support of the [plaintiff's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [plaintiff].'"  *Dawson v. County of Westchester*, 373 F.3d 265, 272 (2d Cir. 2004) (quoting *Anderson*, 477 U.S. at 252)).

2

## II. Facts

The parties agree to the following facts.  During all times relevant to the claims asserted in this case, the plaintiff was confined at Carl Robinson Correctional Institution and the defendants were employed at the same institution.  Carl Robinson Correctional Institution consists of several buildings. Inmates must go outside to get from the housing units to the dining hall or the commissary.

Commissary is a discretionary program within the Department of Correction.  Inmates may purchase various personal and food items from the commissary.  On September 30, 2010, it was raining heavily.  The plaintiff went out in the rain to pick up his commissary order.

On October 28, 2010, the plaintiff received a disciplinary report for having contraband in his cell.  The plaintiff pled guilty to the disciplinary infraction and was sanctioned with thirty days loss of recreation.[1]  On March 14, 2011, the plaintiff received a second disciplinary charge for possession of contraband, a broken piece of razor blade.  The plaintiff was sanctioned with seven days confinement in punitive segregation, fifteen days loss of commissary, and thirty days loss of social visiting privileges for the second charge.

## III. Discussion

---

[1]Although the plaintiff denies this statement in his Local Rule 56(a)2 Statement, he denies the validity of the this charge and the subsequent March 2011 charge.  He provides copies of the disciplinary reports verifying the charges.

3

The plaintiff asserts eight claims in his amended complaint:  first, defendant Whidden failed to protect the plaintiff's First Amendment rights by failing to intercede after he was denied a transfer to another correctional facility, was required to go out in heavy rain to retrieve his commissary order and was questioned by staff; second, defendant Whidden failed to protect the plaintiff's Fourteenth Amendment rights by denying him a move to a different bed; third, defendants Whidden failed to protect the plaintiff's First, Sixth and Fourteenth Amendment rights by not transferring him to a correctional facility with a law library, not providing food trays in his housing unit when the plaintiff was sick and failing to respond to grievances after the plaintiff was transferred to another correctional facility; fourth, defendant Whidden violated the plaintiff's First Amendment rights by failing to respond appropriately to his grievances; fifth, defendant Whidden caused the plaintiff to be subject to unconstitutional conditions of confinement in violation of the Eighth Amendment by refusing to change his bed assignment, refusing to provide sick-call food trays and requiring him to go to the commissary during inclement weather; sixth, defendant Whidden violated the plaintiff's rights under the Americans with Disabilities Act; seventh, defendants Faneuff and Regan retaliated against the plaintiff in violation of his First Amendment rights because he considers himself a jailhouse lawyer; and eighth, defendants Faneuff and Regan retaliated against the plaintiff in violation of his Fourteenth Amendment rights for his activities as a jailhouse lawyer.

The defendants move for summary judgment on three grounds.  They

**4**

argue that the plaintiff fails to state any cognizable claims for the denial of a federally protected right.  In the alternative, they argue that the plaintiff fails to satisfy the physical injury requirement of 42 U.S.C. § 1997e(e), and finally that the defendants are protected by qualified immunity.

The defendants first argue that none of the plaintiff's allegations rise to the level of a constitutional violation cognizable under section 1983.[2]  In the amended complaint, the plaintiff has repeated various factual claims in several causes of action characterizing them as violations of different constitutional rights.  Rather than considering each cause of action, the court considers below each of the factual claims to determine whether the plaintiff has stated a cognizable claim.

A.    Transfer to an Indoor Correctional Facility

The plaintiff argues that defendant Whidden ignored medical recommendations that he be transferred to a correctional facility that was all indoors.  He states that Dr. Wright and Health Services Administrator ("HSA")

_____

[2]In his memorandum, the plaintiff states that the court must assume that all of his factual allegations, in the amended complaint and as expanded in his memorandum, are true.  The plaintiff has mistakenly cited the standard for a motion to dismiss.  This is a motion for summary judgment.  As explained above, the plaintiff must present admissible evidence to support each of his claims.

In addition, the plaintiff cannot amend his complaint by alleging additional unsupported facts and claims in his memorandum.  *See, e.g., Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir.1998) (declining to address merits of claim that "does not appear anywhere in the amended complaint and did not enter the case until [the plaintiff] mentioned it for the first time in her opposition memoranda to the motion to dismiss").  Thus, for example, the court will not consider the claim asserted for the first time in plaintiff's memorandum that the plaintiff's right of access to the courts was violated when his legal materials were not sent to Osborn Correctional Institution in 2011 when he was transferred there. Pl.'s Mem., Doc. #22, at 102.

Furey each approved his transfer and that, each time, Warden Whidden cancelled the transfer order.

Inmates have no constitutionally protected right to be confined in any particular correctional facility or housing unit. *See Olim v. Wakinekona*, 461 U.S. 238, 248 (1983) (inmates have no right to be confined in a particular state or a particular prison within a given state); *Meachum v. Fano*, 427 U.S. 215, 225 (1976) (transfer among correctional facilities, without more, does not violate inmate's constitutional rights, even where conditions in one prison are "more disagreeable" or the prison has "more severe rules). Thus, the mere fact that inmates confined at Carl Robinson Correctional Institution must go outdoors to reach the commissary or dining hall does not warrant a transfer.

The plaintiff states that Dr. Wright and HSA Furey both authorized his transfer to another correctional facility. The evidence filed by the plaintiff in opposition to the motion for summary judgment show that the plaintiff is mistaken.

On November 24, 2010, Dr. Wright reviewed the plaintiff's chart and noted that he was thinking about Osborn Correctional Institution, an indoor facility. Pl.'s Mem., Doc. #22, Attachment 23 at 17, 39. One week later, on December 3, 2010, Dr. Wright approved plaintiff's use of a cane. Although the plaintiff reported that the cane helped him to walk, he returned the cane on February 1, 2011, stating that he did not need it. Pl.'s Mem., Doc. #22, Attachment 23 at 37-39. In his memorandum, the plaintiff includes purported statements by Dr. Wright. Pl.'s

6

Mem., Doc. #22, at 56-57.  These statements are hearsay and not admissible at trial.  Thus, without an affidavit from Dr. Wright or copies of medical records including such statements, the statements are insufficient to oppose the defendants' motion for summary judgment.  *See Graham*, 230 F.3d at 38 (party opposing summary judgment must present such evidence as would allow a jury to find in his favor).  The plaintiff only has provided evidence that Dr. Wright may have considered a transfer.  He has provided no evidence that a transfer for medical reasons ever was ordered or that a recommendation for transfer was communicated to defendant Whidden.

On January 11, 2011, HSA Furey responded to the plaintiff's letter seeking a transfer.  He stated:  "I reviewed your history and see no reason why you could not return to Osborn.  If you want to return to Osborn, I can try [to] help with that."  Pl.'s Mem., Doc. #22, Attachment 10 at 5.  Again, this statement is not an order that the plaintiff be transferred.  Absent any order that the plaintiff be transferred for medical reasons, his claims that defendant Whidden violated his constitutional rights by cancelling his medically required transfer lacks a factual basis and is without merit.

B.     Access to a Law Library or Legal Research Materials

The plaintiff states that he is a jailhouse lawyer and that he cannot effectively represent himself because Carl Robinson Correctional Institution does not have a law library.  He contends that defendant Whidden was required to transfer him to a correctional facility with up-to-date legal research materials.

7

It is well settled that inmates have a First Amendment right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 828 (1977) (*modified on other grounds by Lewis v. Casey*, 518 U.S. 343, 350 (1996)).  To state a claim for denial of access to the courts, the plaintiff must demonstrate that the defendants acted deliberately and maliciously and that he suffered an actual injury.  *See Lewis*, 518 U.S. at 353.

To establish an actual injury, the plaintiff must allege facts showing that the defendants took or were responsible for actions that hindered his efforts to pursue a legal claim, prejudiced one of his existing actions, or otherwise actually interfered with his access to the courts.  *See Monsky v. Moraghan*, 127 F.3d 243, 247 (2d Cir. 2002).  For example, the plaintiff could demonstrate an actual injury by providing evidence "that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of the deficiencies in the prison's legal assistance facilities, he could not have known."  *Lewis*, 518 U.S. at 351.

The plaintiff fails to allege any facts demonstrating an actual injury to support his claim of denial of access to the courts.  He argues that his federal habeas appeal and petition for certiorari were denied because he did not have counsel.  Pl.'s Mem., Doc. #22, at 86.  The plaintiff was able to file both actions and he does not contend that either action was dismissed without a consideration of the merits of his claims.  The fact that the plaintiff may not have been able to litigate effectively once his case was filed, does not constitute an actual injury.  *See id.* at 355 (disclaiming any requirement that inmates be

8

afforded sufficient resources to litigate effectively once their claims are brought before the court).  The plaintiff fails to state a claim for denial of access to the courts.

Further, to the extent that the plaintiff's claim may be construed as a claim that self-representation in other legal matters entitle him to special treatment, his claim fails.  The Supreme Court encourages the States to experiment with various forms of legal assistance.  *See Bourdon v. Loughren*, 386 F.3d 88, 97 (2d Cir. 2004).  In Connecticut, legal assistance in state criminal matters and habeas corpus actions is provided by the Office of the Public Defender and in civil challenges to conditions of confinement by the Inmates' Legal Assistance Program.  If an inmate chooses to forego this assistance and represent himself, the Department of Correction has no obligation to provide other legal services to assist the inmate.  *See, e.g., United States v. Sykes*, 614 F.3d 303, 311 (7th Cir. 2010) ("a defendants who declines appointed counsel and instead invokes his constitutional right to self-representation ... 'does not have a right to access to a law library'");  *see also State v. Fernandez*, 254 Conn. 637, 658, 758 A.2d 842, 853 (2000).

C.     Commissary Access During Inclement Weather

The plaintiff states that he was required to go outdoors in heavy rain to pick up his commissary order.  He argues that defendant Whidden should have made other arrangements for him to get his order.

Commissary access is a privilege.  *See Nicholas v. Davis*, 74 Fed. Appx.

**9**

131, 133 (2d Cir. 2003) (referencing commissary access as a privilege).  No inmate is required to visit the commissary.  The plaintiff had the option of going to the commissary in the rain.  He could have declined.  Other courts have determined that requiring inmates to walk among buildings in the rain is not a constitutional violation.  *See Hartley v. Mosley*, No. 2:03CV1229-WKW, 2006 WL 1527789, at *4 (M.D. Ala. June 1, 2006) (noting that previous case filed by prisoner had been dismissed because "compelling a prisoner to walk in inclement weather did not constitute a violation of the Eighth Amendment"); *Knox v. Wainscott*, No. 03 C 1429, 2003 WL 21148973, at *7 (N.D. Ill. May 14, 2003) (expressing skepticism that forcing a barefoot and improperly dressed inmate to walk outside in winter weather, depending on the length of the walk, would rise to the level of an Eighth Amendment violation); *Taylor v. Gomez*, No. CIVS961167 FCDJFMP, 1998 WL 34256091, at *4 (E.D. Cal. Jul. 16, 1998) (denying summary judgment on inmate's claim that he was required to walk a half-mile in rain or cold to breakfast because action was inconvenient but not harmful), *aff'd*, 182 F.3d 927 (9th Cir. 1999).  Here, the plaintiff was not forced to go out in the rain.

Even if he had been forced to go out in the rain, the plaintiff's constitutional rights would not have been violated absent any resulting harm.  *See, e.g., Whitington v. Ortiz*, No. 07-1425, 2009 WL 74471, at *6 (10th Cir. Jan. 13, 2009) ("Mere discomfort or temporary adverse conditions which pose no risk to health and safety do not implicate the Eighth Amendment."); *Rouse v. Caruso*, No. 06-CV-10961-DT, 2011 WL 918327, at *13 (E.D. Mich. Feb. 18, 2011) (granting motion

for judgment on the pleadings on claim that prisoner was forced to stand outside in the cold and rain with below freezing temperatures for up to forty-five minutes to pick up medications where prisoner did not show that he was not provided adequate clothing and did not suffer harm), *adopted and approved by* 2011 WL 893216 (E.D. Mich. Mar. 14, 2011).

The plaintiff states that he suffers from rheumatoid arthritis in his knees, but conceded that the arthritis was not severe at the time he walked to the commissary in the rain.  Pl.'s Mem., Doc. #22, Attachment 3 at 2.  The plaintiff also alleges that he contracted pneumonia as a result of the walk to the commissary on September 30, 2010.  He provides no evidence to support this allegation.  The defendants have filed a copy of the plaintiff's medical file.  The plaintiff was seen in the medical department on October 1, 2010, but made no reference to symptoms suggesting pneumonia and did not complain about walking in the rain the day before.  The plaintiff did not seek medical attention again until late October.  He was seen on October 27, 2010, for complaints of joint pain as a result of the weather getting colder.  There is no diagnosis of pneumonia in the medical records.   The court concludes that the plaintiff has not provided any evidence to support a claim that he suffered harm from walking to the commissary in the rain.  Thus, even if he were required to walk in the rain, he fails to state a cognizable constitutional claim.

D.    Housing Assignment

In addition to challenging his confinement at Carl Robinson Correctional

**11**

Institution, the plaintiff also challenges his transfer to a different housing unit within the prison.  He alleges that the new dormitory unit was noisier and that younger inmates tended to congregate near his bed.  As stated above, a transfer to a different facility with harsher conditions is not unconstitutional.  Similarly, a transfer to a different housing unit within the prison does not violate any constitutionally protected rights.  *See Russell v. Scully*, 15 F.3d 219 (2d Cir. 1993) (inmates have no due process interest in being confined in a certain location within a prison).   Thus, there is no legal basis for the plaintiff's Fourteenth Amendment claim against defendant Whidden relating to his transfer to a different housing unit.

E.    Meals Served in Housing Unit

The plaintiff claims that he was denied meals on six different days, September 30, 2010, September 31, 2010,[3] October 27, 2010, November 1, 2010, November 4, 2010 and November 14, 2010.  The plaintiff states that he was too sick to leave his bed and defendant Whidden would not make an exception to the policy that all meals must be taken in the dining hall.

Again, the plaintiff has presented no evidence to support this claim.  He directs the court to a portion of his medical records to show that he requested to see medical staff.  Pl.'s Mem., Doc. #22, at 61 & Attachment 23 at 2-9.  The attachments show that the plaintiff submitted a sick call request on October 22,

------------------------------------

[3]September only has 30 days.  For purposes of this ruling, the court will assume that the plaintiff meant October 1, 2010.

12

2010.  This request is not in the copy of his medical file submitted by the defendants.  The plaintiff did not specify a reason for the request.  He requested refills for his medications on November 1, 2010.  A notation indicated that the plaintiff was called twice to the medical unit but did not go.  On November 4, 2010, he submitted a sick call request, again without specifying a reason.

The medical records submitted by the defendants show that the plaintiff was seen in the medical department on October 1, 2010 and October 27, 2010, two of the dates on which the plaintiff claims that he was too sick to leave his bed. The plaintiff did not complain of debilitating symptoms at either visit.  The court concludes that the plaintiff fails to present any evidence of debilitating illness and, therefore, fails to demonstrate a factual basis for his claim.

     **F.**    **Retaliation**

The plaintiff contends that defendants Faneuff and Regan retaliated against him because he is a jailhouse lawyer.  Prison officials may not retaliate against inmates for exercising their constitutional rights.  To state a retaliation claim, the plaintiff must show that his actions were protected by the Constitution or federal law and that his protected conduct was a "substantial or motivating factor" in the alleged retaliatory conduct.  *Friedl v. City of New York*, 210 F.3d 79, 85 (2d Cir. 2000).  Because claims of retaliation are easily fabricated, the courts consider such claims with skepticism and require that they be supported by specific facts; conclusory statements are not sufficient.  *See Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 2003).  To support a claim of retaliation, the allegedly retaliatory

**13**

conduct must deter a similarly situated inmate of ordinary resolve from exercising his constitutional rights.  It is not necessary that the plaintiff himself be deterred.  *See Gill v. Pidlypchak*, 389 F.3d 379, 381 (2d Cir. 2004).   Any lesser conduct is *de minimis* and does not support a retaliation claim.  Prisoners are required to tolerate more serious conduct before stating a retaliation claim.

Temporal proximity of an allegedly retaliatory disciplinary report to an inmate's grievance or complaint can be circumstantial evidence of retaliation. *See Gayle v. Gonyea*, 313 F.3d 677, 683 (2d Cir. 2002).  The Second Circuit has found sufficient evidence of retaliation when there is both a short time between protected activity and the retaliatory conduct and direct involvement by the defendant.  *See Morales v. Mackalm*, 278 F.3d 126, 131 (2d Cir. 2002) (overruled on other grounds, i.e. exhaustion requirement) (short time between protected activity and retaliation coupled with defendants' involvement in the decision to transfer is sufficient to support inference of retaliatory motive).

The plaintiff alleges that defendants Faneuff and Regan made repeated references to his activities as a jailhouse lawyer and threatened him when they were speaking to him in September 2010 regarding his objection to walking in the rain to the commissary.  Defendants Faneuff and Regan admit speaking with the plaintiff but deny making any threats.  Moreover, the plaintiff's declaration in opposition to the defendant's motion for summary judgment does not cite any actual threats. [Dkt. No. 22, p.37].

The plaintiff provides no evidence that defendants Faneuff and Regan

**14**

carried through with any alleged threats.  *See Hill v. Chalanor*, 128 Fed. Appx. 187, 189 (2d Cir. 2005) (holding that alleged threats without any allegation that the maker carried through on the threats did not constitute adverse action to support a retaliation claim); *Bartley v. Collins*, No. 95 Civ. 10161(RJH), 2006 WL 1289256, at *6 (S.D.N.Y. May 10, 2006) ("[V]erbal threats such as 'we going to get you, you better drop the suit,' do not rise to the level of adverse action."); *Alicea v. Howell*, 387 F. Supp. 2d 227, 237 (W.D.N.Y. 2005) ("[Defendant's] alleged statements to plaintiff about there being 'no secrets in prison' and that plaintiff would 'have to pay the consequences' for filing a grievance against [defendant] do not give rise to a First Amendment retaliation claim.").  The plaintiff does state that he suffered emotional stress because he feared that defendants Faneuff and Regan would take action against him.  He does not allege, however, that he curtailed his legal activities and the court concludes that the alleged statements, that the defendants could make his life miserable, would not deter an inmate of ordinary resolve from continuing to litigate.  Thus, the alleged threats are insufficient to support a retaliation claim against defendants Faneuff and Regan.

The plaintiff did receive two disciplinary reports, the first in October 2010, one month after the interview, and the second in March 2011, six months after the interview.  The reports were not issued by defendants Faneuff and Regan and the plaintiff has presented no evidence demonstrating their involvement in the issuance of the reports.  To state a claim for retaliation regarding the filing of a false misbehavior report, the plaintiff must allege that a defendant not only filed

the report but that his motivation to do so relates to the plaintiff having engaged in protected activity.  *See Franco v. Kelly*, 854 F.2d 584, 589-90 (2d Cir. 1988). With regard to false misbehavior reports, the type of evidence required to establish a causal connection between the plaintiff's protected conduct and the alleged retaliation include temporal proximity, prior good discipline, a finding of not guilty at the disciplinary hearing and statements from the defendants regarding their motives.  *See Barclay v. New York*, 477 F. Supp. 2d 546, 558 (N.D.N.Y. 2007).  Here, the plaintiff received the first disciplinary charge one month after the interview with defendants Faneuff and Regan, and the second nearly six months later.  Defs's Mem.. Doc. #19, Attachments 1 & 2.   Neither defendant issued the disciplinary reports and neither made statements linking himself to either disciplinary report.  Also, the plaintiff entered guilty pleas to both charges, obviating the need for correctional officials to determine his guilt and waiving a right to appeal.  The court concludes that circumstantial evidence does not support a retaliation claim against defendants Faneuff and Regan regarding the issuance of the disciplinary reports.

      G.    <u>Grievance Procedures</u>

      The plaintiff argues that defendant Whidden violated his right to due process by improperly handling his grievances and failing to ensure that staff complied with all grievance practices.  Procedural due process ensures that the government utilizes fair procedures.  To state a claim for violation of procedural due process, the plaintiff must show that he had a protected liberty interest and,

**16**

if he had such an interest, that he was deprived of that interest without being afforded due process of law.  He has a protected liberty interest only if the state created a liberty interest in a statute or regulation and the deprivation of that interest caused him to suffer an atypical and significant hardship.  *See Tellier v. Fields*, 280 F.3d 69, 81 (2d Cir. 2000).

State-created inmate administrative remedy procedures do not create a protected liberty interest.  Thus, Fourteenth Amendment due process protections are not implicated regardless of the actions taken by the defendants in connection with the plaintiff's administrative filings.  *See Rhodes v. Hoy*, No. 9:05-CV-836, 2007 WL 1343649, at *2 (N.D.N.Y. May 5, 2007).  Other courts of appeal considering this issue agree that inmates do not have a constitutionally protected liberty interest in having prison officials comply with institutional grievance procedures.  *See, e.g., Grieveson v. Anderson*, 538 F.3d 763, 772 (7th Cir. 2008); *Thomas v. Warner*, 237 Fed. Appx. 435, 437-38 (11th Cir. 2007); *Rhoades v. Adams*, 194 Fed. Appx. 93, 95 (3d Cir. 2006); *Geiger v. Jowers*, 404 F.3d 371, 373-74 (5th Cir. 2005) *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993) (per curiam).  Thus, the complaint fails to state a claim for denial of due process for failure to follow the grievance procedures.

H.    Americans with Disabilities Act Claim

The plaintiff asserts a violation of rights protected under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132.  In his memorandum, he asks the

17

court to determine whether he suffers from a disability and whether his rights were violated.

The State of Connecticut is a public entity within the meaning of the ADA. *See* 42 U.S.C. § 12131(1)(A)(defining public entity to include any state or local government).  The plaintiff has not, however, named the State of Connecticut as a defendant.  The Second Circuit has recognized that a valid ADA claim may be stated against a state official in his official capacity.  *See Henrietta D. v. Bloomberg*, 331 F.3d 261, 289 (2d Cir. 2003).  Specific public employees, however, are not included within the definition of public entity.  Thus, Title II of the ADA does not "provide[] for individual capacity suits against state officials."  *See Garcia v. S.U.N.Y. Health Sciences Center of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001).

Title II of the ADA, entitled "Public Services," provides, in relevant part: "Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  Title II abrogates a state's sovereign immunity and permits a private action for damages against the state "only for conduct that *actually* violates the Fourteenth Amendment."  *United States v. Georgia*, 546 U.S. 151, 159 (2006).  The Fourteenth Amendment incorporates the Eighth Amendment protection from cruel and unusual punishment.  *Louisiana ex rel. Francis v. Resweber*, 329 U.S. 459, 463

(1947) (plurality opinion).  Because the court has concluded above that the plaintiff fails to assert any cognizable constitutional claims, his Title II ADA claim necessarily fails.

### IV. Conclusion

The Defendants' Motion for Summary Judgment [Doc. #19] is GRANTED. Any claim pursuant to the ADA is dismissed pursuant to 28  U.S.C. § 1915A.  The Clerk is directed to enter judgment in favor of the defendants and close this case.


IT IS SO ORDERED.

_____/s/_____
Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut this 29th day of February, 2012.